UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
TOPEKA DIVISION

| | |
|---|---|
| FRESH VISION OP, INC.,<br>JAMES G. MUIR, and<br>CHENGNY THAO,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>MARK SKOGLUND,<br>Executive Director, Kansas Governmental<br>Ethics Commission, in his official capacity,<br>NICHOLAS HALE,<br>Chairman, Kansas Governmental Ethics<br>Commission, in his official capacity,<br>BEAU JACKSON,<br>Member, Kansas Governmental Ethics<br>Commission, in his official capacity,<br>JOHN SOLBACH,<br>Member, Kansas Governmental Ethics<br>Commission, in his official capacity,<br>SAMUEL KLAASSEN,<br>Member, Kansas Governmental Ethics<br>Commission, in his official capacity,<br>CHRIS BURGER,<br>Member, Kansas Governmental Ethics<br>Commission, in his official capacity,<br>ANDREW HARRISON,<br>Member, Kansas Governmental Ethics<br>Commission, in his official capacity,<br>EARL GLYNN,<br>Member, Kansas Governmental Ethics<br>Commission, in his official capacity,<br>JEROME HELLMER,<br>Member, Kansas Governmental Ethics<br>Commission, in his official capacity, and<br>TESS RAMIREZ,<br>Member, Kansas Governmental Ethics<br>Commission, in her official capacity,<br><br>     *Defendants*. | Case No. 24-cv-_____<br><br><br><br><br><br>COMPLAINT<br>FOR DECLARATORY,<br>INJUNCTIVE, AND<br>OTHER RELIEF |

INTRODUCTION

Fresh Vision OP is a grass roots nonprofit corporation that seeks to maintain the quality of life for the residents of Overland Park through public advocacy and educational initiatives. But when Fresh Vision endorsed a candidate for mayor of Overland Park, who it believed would further its mission, the government threatened Fresh Vision's officers with tens of thousands of dollars in fines and imprisonment if they did not register the group as a political action committee and disclose its donors and internal financial operations.

Fresh Vision and its officers intend to raise community awareness about local hotel, neighborhood, retail, and other residential development projects; development projects supported by additional sales taxes; and expansion of the local arboretum into an event center. But they hold back their activism, because they fear prosecution from Defendants unless they reveal their private associations and submit to a range of intrusive measures for making a political statement.

Kansas law defines a "political committee" as any group with "*a* major purpose" of expressly advocating for candidates or contributing to them. K.S.A. § 25-4143(l)(1) (emphasis added). A political committee designation triggers many onerous requirements, including paying a fee to exist, reporting the identities of the group's officers, and continuously disclosing all financial activities, the name, address, and occupation of the group's donors and those to whom it makes expenditures, all the candidates it supports, its total contributions and expenditures, and the group's bank balance. K.S.A. §§ 25-4145, 25-4148; 25-4148a. But the First Amendment only allows the government to regulate groups with *the* major purpose of expressly advocating for candidates. *See N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 (10th Cir. 2010) (quoting *Buckley v. Valeo*, 424 U.S. 1, 79 (1976) (*per curiam*)).

Moreover, Kansas's extreme laws automatically regulate anyone spending as little as $100 a year on express advocacy, even if they do not otherwise meet the definition of a political committee. *See* K.S.A. § 25-4150 and K.A.R. § 19-21-5. But a $100 expenditure threshold is unconstitutionally low and cannot be a proxy for "the major purpose" of an organization, as an amount this small is insubstantial in relation to a group's overall budget. This is settled law.

Kansas's "a major purpose" definition of "political committee" and its $100 reporting trigger each violate the First Amendment. This Court should enjoin them.

JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1343, because this action challenges Defendants' violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983.

2.      Venue lies in this Court under 28 U.S.C. §§ 1391(b)(1) ("a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located") and (b)(2) (the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

THE PARTIES

3.      Plaintiff Fresh Vision OP, Inc., is a nonprofit tax-exempt Kansas corporation that seeks to preserve the quality of life in and around the Overland Park area by promoting wholesome neighborhoods, economic growth of local small business, public safety, and responsible land development.

4.      Plaintiff James G. Muir resides in Overland Park, Kansas, and is Fresh Vision's President.

5.      Plaintiff Chengny Thao resides in Overland Park, Kansas, and is Fresh Vision's Secretary and Treasurer.

6.      Defendant Mark Skoglund is the Executive Director of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

7.      Defendant Nicholas Hale is the Chairman of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

8.      Defendant Beau Jackson is a Member of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

9.      Defendant John Solbach is a Member of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

10.     Defendant Samuel Klaassen is a Member of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

11.     Defendant James Webb is a Member of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

12.     Defendant Chris Burger is a Member of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

13.     Defendant Andrew Harrison is a Member of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

14.     Defendant Earl Glynn is a Member of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

15.     Defendant Jerome Hellmer is a Member of the Kansas Governmental Ethics Commission. He is sued in his official capacity.

16.     Defendant Tess Ramirez is a Member of the Kansas Governmental Ethics Commission. She is sued in her official capacity.

FACTS

*Kansas Campaign Finance Law*

*"Political Committee"*

17.      Kansas defines a "Political Committee" as: "any combination of two or more individuals or any person other than an individual, *a* major purpose of which is to expressly advocate the nomination, election or defeat of a clearly identified candidate for state or local office or make contributions to or expenditures for the nomination, election or defeat of a clearly identified candidate for state or local office." K.S.A. § 25-4143(l)(1) (emphasis added).

18.     K.A.R. §19-21-3 is K.S.A. § 25-4143(l)(1)'s supplemental regulation. It lists the "factors [that] shall be considered in determining whether a combination of two or more persons, or a person other than an individual, constitutes a political committee," the officers that must be appointed, a payroll deduction plan exception to political committee rules, and rules for when an "organization shall be considered to be affiliated or connected with a reporting political committee." K.A.R. §19-21-3.

19.     Kansas requires "each political committee" that "anticipates receiving contributions or making expenditures" to pay a fee, appoint officers, and file a disclosure statement containing the committee's name and address; the committee's primary interest; the names, addresses and email address of the group's officers; and the names and addresses of any affiliated organizations. K.S.A. § 25-4145.

20.     K.S.A. § 25-4148(b) requires political committees to file timely statements disclosing:

(1)     Cash on hand on the first day of the reporting period;

(2)     the name and address of each person who has made one or more contributions in an aggregate amount or value in excess of $50 during the election period together with the amount and date of such contributions, including the name and address of every lender, guarantor and endorser when a contribution is in the form of an advance or loan;

(3)     the aggregate amount of all proceeds from bona fide sales of political materials such as, but not limited to, political campaign pins, buttons, badges, flags, emblems, hats, banners and literature;

(4)     the aggregate amount of contributions for which the name and address of the contributor is not known;

(5)     each contribution, rebate, refund or other receipt not otherwise listed;

(6)     the total of all receipts;

(7)     the name and address of each person to whom expenditures have been made in an aggregate amount or value in excess of $ 50, with the amount, date, and purpose of each; the names and addresses of all persons to whom any loan or advance has been made; when an expenditure is made by payment to an advertising agency, public relations firm or political consultants for disbursement to vendors, the report of such expenditure shall show in detail the name of each such vendor and the amount, date and purpose of the payments to each;

(8)     the name and address of each person from whom an in-kind contribution was received or who has paid for personal services provided without charge to or for any candidate, candidate committee, party committee or political committee, if the contribution is in excess of $ 100 and is not otherwise reported under subsection (b)(7), and the amount, date and purpose of the contribution;

(9)     the aggregate of all expenditures not otherwise reported under this section; and

(10)    the total of expenditures.

21.     For any contribution or other receipt from a political committee that must be reported under K.S.A. § 25-4148(b), "the report shall include the full name of the organization with which the political committee is connected or affiliated or, a description of the connection to or

affiliation with such organization." K.S.A. § 25-4148(e). "If, the committee is not connected or affiliated with any one organization, the report shall state the trade, profession or primary interest of the political committee as reflected by the statement of purpose of such organization." *Id.*

22.     Moreover, K.S.A. § 25-4148(c) requires every treasurer of a political committee to report:

(1)(A)     The name and address of each candidate for state or local office for whom an expenditure in the form of an in-kind contribution has been made in an aggregate amount or having a fair market value in excess of $300, with the amount, date and purpose of each. The report shall show in detail the specific service or product provided; and

(B)     the name and address of each candidate for state or local office who is the subject of an expenditure which:

(i)     is made without the cooperation or consent of a candidate or candidate committee;

(ii)     expressly advocates the nomination, election or defeat of such candidate; and

(iii)     is an aggregate amount or having a fair market value in excess of $300.

(2)     The report shall state the amount, date and purpose of the expenditure in the form of an in-kind contribution. The report shall show in detail the specific service or product provided. The reporting requirements imposed by this subsection shall be in addition to all other requirements required by this section.

23.     Failure to comply with K.S.A. § 25-4145 or K.S.A. § 25-4148 subjects the offender to civil penalties. *See* K.S.A. § 25-4152.

*$100 Reporting Threshold*

24.     "Every person, other than a candidate or a candidate committee, party committee or political committee, who makes contributions or expenditures, other than by contribution to a candidate or a candidate committee, party committee or political committee, in an aggregate amount of $100 or more within a calendar year shall make statements containing the information

required by K.S.A. § 25-4148, and amendments thereto." K.S.A. § 25-4150. The place of filing depends on the race which the contributions or expenditures are intended to influence. *Id.*

25.     "Every person, other than a candidate or a candidate committee, party committee, or political committee, who makes independent contributions or expenditures other than by contribution to a candidate or a candidate committee, party committee, or political committee, in an aggregate amount of one hundred dollars ($100) or more within a calendar year shall make verified statements [to the government] containing the information required by K.A.R. § 19-29-2." K.A.R. §19-21-5.

26.     When an aggregate amount of one hundred dollars ($100) or more is made within a calendar year, K.A.R. § 19-29-2 requires disclosure of who the money was spent on, that person's political purpose, the time period of the report, the donor's bank balance, the donor's list of contributions and expenditures, the total cash available to the donor during the reporting period, all in-kind contributions and "other obligations," a monetary contribution schedule, an in-kind contribution schedule, an expenditures and disbursements schedule, an "other transactions" schedule, which includes all loans payable and receivable.

*Monetary & Criminal Penalties*

27.     "[I]n addition to any other penalty prescribed under the campaign finance act," a "civil fine, …, against any person for a violation of the campaign finance act in an amount not to exceed $5,000 for the first violation, $10,000 for the second violation and $15,000 for the third violation and for each subsequent violation," may be assessed "in addition to any other penalty prescribed under the campaign finance act." K.S.A. § 25-4181.

28.     Intentional "[f]ailure to file a campaign finance report" is "a class A misdemeanor." K.S.A. § 25-4167.

29.     A class A misdemeanor is punishable by a "term of confinement in the county jail" that "shall not exceed one year," K.S.A. § 21-6602(a)(1), and "in addition to or instead of the imprisonment authorized by law, may be sentenced to pay a fine." K.S.A. § 21-6611(b).

*Defendants' Role*

30.     The Kansas Governmental Ethics Commission (the "commission") administers Kansas campaign finance law and is empowered to "adopt rules and regulations for the administration of the campaign finance act." K.S.A. § 25-4119a(d).

31.     "A majority vote of five members of the commission shall be required for any action of the commission." K.S.A. § 25-4119a(c).

32.     "The commission may investigate, or cause to be investigated, any matter required to be reported upon by any person under the provisions of the campaign finance act, or any matter to which the campaign finance act applies irrespective of whether a complaint has been filed in relation thereto." K.S.A. § 25-4158(c).

33.     "The commission may authorize the executive director to investigate any matter required to be reported by any person under the relevant law, or any matter to which the relevant law applies irrespective of whether a civil penalty has been assessed or a complaint has been filed in relation to it." K.A.R. § 19-3-1.

34.     "Whenever any matter is brought to the attention of a member of the commission or the executive director which appears to raise an issue of a violation of the relevant law, the executive director is authorized to conduct a preliminary inquiry on the issue of whether there are facts sufficient to support the appearance of a violation. At the conclusion of a preliminary inquiry, the executive director shall report to the commission. The commission shall thereafter determine whether further investigation is required." K.A.R. § 19-3-3.

35.     "The executive director shall file a complaint following the completion of an investigation conducted pursuant to K.A.R. 19-3, if in the executive director's judgment there is probable cause to believe that a provision of relevant law has been violated." K.A.R. § 19-5-1.

36.     Under K.S.A. § 25-4164, if the commission determines a violation of the Kansas campaign finance act occurred, it "shall" report its findings "to the attorney general and to the county or district attorney of the appropriate county."

*Fresh Vision's Mission, Past Activities, and Future Plans*

37.     Fresh Vision has never been controlled by a candidate for public office or a candidate's political committee.

38.     Fresh Vision's major purpose is to preserve the quality of life in and around the Overland Park area by promoting wholesome neighborhoods, economic growth of local small business, public safety, and responsible land development.

39.     Fresh Vison stands for integrity and transparency, fiscal responsibility, family values, neighborhood safety, and environmental responsibility.

40.     Fresh Vison supports law enforcement, hazard pay for first responders, safe neighborhoods, and responsible land development.

41.     Fresh Vison opposes chip seal roads, highway 69 tolls, prefabricated homes, high density luxury apartments, and tax giveaways.

42.     Fresh Vision is nonpartisan, and is open to endorsing any candidate that is committed to pursuing policies that promote the best interest of everyone living in Overland Park.

43.     On or about February 2021, Fresh Vision began engaging in public advocacy and community education initiatives to promote its mission. Fresh Vision's officers and members attended community events to advocate for the organization's goals, distributed flyers and other

materials to educate the public about development projects and other issues that were important to the organization, and furthered these advocacy and educational efforts by posting information on Fresh Vision's webpage.

44.     On or about July 2021, Fresh Vision advocated for Dr. Faris Farassati's election as mayor of Overland Park by mailing materials promoting his candidacy to voters and endorsing him on its webpage.

45.     On or about August 5, 2021, Defendants sent a letter to Fresh Vision's officers accusing them of operating the organization as an unregistered political committee because of its express advocacy, and threatened them with fines and imprisonment if they did not comply with Kansas's campaign finance laws. *See* Ex. 1.

46.     Plaintiffs retained counsel, and responded claiming that Defendants committed several procedural due process violations, which included the presentation of unsworn testimonial evidence against the Plaintiffs by Defendants' Executive Director, who was prosecuting Plaintiffs with a suspended law license. *See* Ex. 2.

47.     Subsequently, Defendants dismissed the charges against Fresh Vision's officers without admitting that they had misapplied Kansas campaign finance law or securing any type of admission by Fresh Vision's officers that they had failed to comply with Kansas campaign finance law.

48.     After this encounter with the Defendants, Fresh Vision and its officers feared further prosecution by Defendants if they continued their community organizing efforts without complying with the reporting and disclosure provisions imposed on political committees and their officers.

49.     Plaintiffs do not want to be unlawfully forced to comply with Kansas's many onerous campaign finance law requirements, including paying a fee to exist, reporting the identities of the group's officers, and continuously disclosing all financial activities, the name, address, and occupation of the group's donors and those to whom it makes expenditures, all the candidates it supports, its total contributions and expenditures, and the group's bank balance. Compliance is time consuming, expensive, and unduly burdensome for an organization without the major purpose of influencing elections. Plaintiffs also fear that donors and potential donors will be less likely to contribute if their identities are revealed.

50.     Therefore, Fresh Vision suspended operations to avoid being regulated as a political committee, and to avoid exposing its officers to liability under Kansas's campaign finance laws for failing to file the required reports.

51.     Now, however, Fresh Vision desires and intends to again pursue its major purpose of encouraging smart development in Overland Park. It desires and intends to pursue this purpose indefinitely by engaging in public advocacy and community education initiatives about local issues, such as road surfacing, sewer issues, highway tolls, first responder pay and residential development concentration. This will be done, as before, by speaking at public events, distributing flyers and other informational materials, and supplementing these efforts with more information on its webpage.

52.     Fresh Vision desires and intends to begin raising community awareness immediately about local hotel, neighborhood, retail, and other residential development projects; development projects supported by additional sales taxes; and the expansion of the local arboretum into an event center.

53.     Fresh Vision will raise awareness of these issues through its website, direct mail, and community organizing.

54.     To finance these efforts, Fresh Vision must begin fundraising immediately.

55.     Fresh Vision does not want to reveal the identity of its contributors.

56.     Fresh Vision, its members, and officers also desire and intend to support the organization's goals by occasionally contributing or spending small amounts to advocate for and against candidates for public office, by endorsing candidates, promoting candidates on its webpage, and distributing literature promoting its endorsed candidates.

57.     Fresh Vision foresees the organization, its members, or officers contributing or spending aggregate amounts of $100 or more, within a calendar year, to occasionally advocacy for or against candidates.

58.     However, in the absence of protection from this Court, Plaintiffs will refrain from pursuing their First Amendment right to organize around and advocate for local issues—the major purpose of Fresh Vision—because they fear they will again face large fines and jail time for failing to comply with the challenged provisions and be forced to reveal the identities of their contributors.

COUNT ONE
RIGHTS OF FREE SPEECH AND ASSOCIATION, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
CHALLENGE TO POLITICAL COMMITTEE REGULATION UNDER
K.S.A. § 25-4143(L)(1)

59.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 58.

60.   Fresh Vision does not have *the* singular major purpose of nominating or electing a candidate for public office. But K.S.A. § 25-4143(l)(1) enables the government to treat Fresh Vision as a political committee, along with its supplemental regulation K.A.R. §19-21-3, burdening its speech and association with the filing and disclosure requirements of K.S.A. §§ 25-

4145 and 25-4148, merely because it has "a" tangential purpose of advocating for or against candidates for public office.

61.   The government may impose such reporting and disclosure requirements on organizations only if they "are under the control of a candidate or *the* major purpose of [the organization] is the nomination or election of a candidate." *N.M. Youth Organized v. Herrera*, 611 F.3d 669, 676-77 (10th Cir. 2010) (quoting *Buckley v. Valeo*, 424 U.S. 1, 79 (1976) (*per curiam*)) (emphasis added). But organizations cannot be subjected to such requirements if political advocacy is only incidental to their mission.

62.   By subjecting organizations to the requirements of K.S.A. §§ 25-4145 and 25-4148 if they engage in incidental political advocacy, K.S.A. § 25-4143(l)(1) on its face violates the First Amendment.

63.   By enforcing K.S.A. §§ 25-4143(l)(1), 25-4145 and 25-4148 and K.A.R. §19-21-3 against Plaintiffs, Defendants, under color of law, impermissibly burden Plaintiffs' freedoms of political expression and association in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement of K.S.A. §§ 25-4143(l)(1), 25-4145 and 25-4148; K.A.R. §19-21-3; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT TWO
RIGHTS OF FREE SPEECH AND ASSOCIATION, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
CHALLENGE TO $100 THRESHOLD IN K.S.A. § 25-4150 AND K.A.R. 19-21-5

64.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 63.

65.   Under K.S.A. § 25-4150 and K.A.R. § 19-21-5, Kansas imposes burdensome reporting and disclosure provisions on Fresh Vision and its officers if the group, its members, or officers contribute or spend as little as $100 for political advocacy.

66.   Imposing such burdens as a consequence of contributing or spending $100 for political advocacy violates the First Amendment rights of free speech and association, as doing so does not advance any valid state interest, and in any event is not narrowly tailored to advancing a compelling or even important state interest in light of the harm that burdens impose in chilling speech and association.

67.   By subjecting organizations, their members, or officers to the requirements of K.S.A. § 25-4148 and K.A.R. § 19-29-2 if they contribute or expend $100 a year on political advocacy, K.S.A. § 25-4150 and K.A.R. § 19-21-5 on their face violate the First Amendment.

68.   By enforcing K.S.A. §§ 25-4148, 25-4150 and K.A.R. §§ 19-21-5, 19-29-2, against Plaintiffs, Defendants, under color of law, deprive Plaintiffs of the freedoms of political expression and association in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs are damaged in violation of 42 U.S.C. § 1983, and, therefore, are entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of K.S.A. §§ 25-4148, 25-4150 and K.A.R. §§ 19-21-5, 19-29-2; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

PRAYER FOR RELIEF

Plaintiffs, Fresh Vision OP, Inc., James G. Muir, and Chengny Thao request judgment be entered in their favor and against Defendants as follows:

A.  Orders preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing K.S.A. §§ 25-4143(l)(1) and 25-4150 and K.A.R. § 19-21-5; and further enjoining them from enforcing these provisions, as well as K.S.A. §§ 25-4145 and 4148 and K.A.R. §§ 19-21-3 and 19-29-2 against Plaintiffs;

B.  Declaratory relief consistent with the injunction, to the effect that K.S.A. §§ 25-4143(l)(1) and 25-4150 and K.A.R. § 19-21-5 are unconstitutionally void and unenforceable as they violate the First Amendment rights to free speech and association; and that applying these provisions, as well as K.S.A. §§ 25-4145 and 4148, and K.A.R. §§ 19-21-3 and 19-29-2 against Plaintiffs, violates Plaintiffs' First Amendment rights to free speech and association;

C.  Costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and,

D.  Any other relief this Court may grant in its discretion.

Dated: June 24, 2024

Respectfully submitted,

/s/ Ryan A. Kriegshauser

Charles Miller (*pro hac vice* pending)
D.C. Bar ID #90022644
Ryan Morrison (*pro hac vice* pending)
D.C. Bar ID #1660582
INSTITUTE FOR FREE SPEECH
150 Connecticut Ave., NW, Suite 801
Washington, DC 20036
T: 202-301-3300
F: 202-301-3399
cmiller@ifs.org
rmorrison@ifs.org

Ryan A. Kriegshauser, Kan. Bar #23942
Joshua A. Ney, Kan. Bar #24077
KRIEGSHAUSER NEY LAW GROUP
15050 W. 138th St., Unit 4493
Olathe, KS  66063
T: 913-303-0639
F: 785-670-8446
firm@knlawgroup.com

*Counsel for Plaintiffs*